UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 08-217-GWU

BARBARA JACKSON, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff had previously filed Jackson v. Astrue, London Civil Action No. 06-377-GWU (E.D. Ky.) to appeal from a negative administrative decision on her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). After the undersigned's Memorandum Opinion, Order and Judgment of May 14, 2007 (Tr.270-81), the case was returned to the agency for further consideration of the treating physician's proposed restrictions. (Tr. 280-1). The case was consolidated with subsequent applications for DIB and SSI made in June, 2006. (Tr. 248). Another negative administrative decision issued (Tr. 248-57) and the case is again before the undersigned on cross-motions for summary judgment.

## APPLICABLE LAW

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir.

1

1991); Crouch v. Secretary of Health and Human Services, 909 F.2d 852, 855 (6th Cir. 1990).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Crouch, 909 F.2d at 855.

The regulations outline a five-step analysis for evaluating disability claims.  See 20 C.F.R. § 404.1520.

The step referring to the existence of a "severe" impairment has been held to be a de minimis hurdle in the disability determination process.  Murphy v. Secretary of Health and Human Services, 801 F.2d 182, 185 (6th Cir. 1986).  An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience." Farris v. Secretary of Health and Human Services, 773 F.2d 85, 90 (6th Cir. 1985).  Essentially, the severity requirements may be used to weed out claims that are "totally groundless."  Id., n.1.

Step four refers to the ability to return to one's past relevant category of work, the plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work.  Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national

08-217 Barbara Jackson

economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental

contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." <u>Abbott v. Sullivan</u>, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  <u>Ibid</u>. In such cases, the agency may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

On remand, the ALJ considered additional testimony from the plaintiff and evidence from her treating physician, Dr. David Delapena, and ordered a consultative psychological evaluation.  He concluded, however, that the plaintiff would have the same residual functional capacity as he had previously determined; namely, a restriction to "light" level exertion with no climbing, balancing, stooping, bending, crouching, or crawling, and no overhead reaching with either arm.  (Tr. 18, 253).  Having presented a hypothetical question reflecting these factors to a

Vocational Expert (VE) at the prior hearing, the ALJ chose to rely on the VE's response that there were jobs that such a person could perform. (Tr. 237-8, 256-7, 278). Accordingly, the ALJ determined that the plaintiff was not entitled to benefits. The Appeals Council took no action, and the plaintiff's appeal followed.

The focus of the court's remand concerned the ALJ's rationale for rejecting functional restrictions given by Dr. Delapena, who was not only the sole examining source to express an opinion regarding functional capacity, but also a treating source. (Tr. 281). Dr. Delapena had limited Mrs. Jackson to less than sedentary level exertion and less than full-time standing, walking, and sitting. (Tr. 203-6). Mrs. Jackson continued to seek treatment from Dr. Delapena for back pain and depression (e.g, Tr. 341-2, 522-3, 574), and the plaintiff approached him for a "disability determination" on September 12, 2007. Unfortunately for the plaintiff, Dr. Delapena wrote that he had informed her that he was "not equipped to do a disability determination" although he "went ahead and filled out her papers the best I could." (Tr. 574). He added that it was difficult to find out exactly how much she could work, and how many minutes she could stand, sit or bend, and "I have no way to prove how much she can do." (Id.). In light of these statements, the ALJ reasonably found that Dr. Delapena's restrictions, which would clearly preclude all full-time work activity (Tr. 578-81), were not based on objective signs, symptoms, or laboratory findings (Tr. 255).

08-217 Barbara Jackson

The only other recent medical opinion regarding physical restrictions was from a state agency reviewing source, who concluded in January, 2007 that Mrs. Jackson had the restrictions found in the prior administrative decision. (Tr. 525-31). This portion of the decision is clearly supported by substantial evidence.

Regarding the plaintiff's mental status, she described depression and irritability, for which she was receiving Zoloft from Dr. Delapena. (Tr. 619). The ALJ determined that it would be prudent to obtain a consultative psychological evaluation. (Tr. 621).

The examination was obtained on November 14, 2007 and performed by "Chris Catt Consulting." (Tr. 354).[1] The plaintiff described having been on Zoloft for three years although she did not find it helpful. (Tr. 35). She reported that she had been depressed for many years, endorsing items such as lack of energy, feelings of worthlessness and hopelessness, irritability, trouble concentrating, and increased worry. (Tr. 356). Dr. Catt found her facial expression to be constricted, her affect restricted, and her mood pessimistic. (Id.). She was able to manage her self-care adequately, but did not do many household chores because of pain, and did not manage bills or shop. (Tr. 355). Her memory and coping ability appeared

---

[1] The report was signed both by Christopher Catt, Licensed Clinical Psychologist, and Jessica M. Huett, a "Temporary Licensed Psychologist." (Tr. 357). The ALJ referred to Dr. Catt as performing the examination (Tr. 254), an example the court will follow for the sake of convenience.

to be adequate, but she had a limited amount of insight and skill deficits in the area of interpersonal relationships. (Tr. 355-6). The psychologist diagnosed moderate to severe recurrent major depressive disorder and an anxiety disorder, and gave a current Global Assessment of Functioning (GAF) score of 50. A GAF score in this range reflects a serious impairment in social, occupational, or school functioning. Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision), p. 34. He wrote in his narrative summary that the plaintiff would have a "moderate to marked" limitation in her ability to respond appropriately to supervision, coworkers, and work pressures, and to tolerate the stress and pressures of day-to-day work activities. (Tr. 357). Limitations in other areas were no worse than "moderate." Dr. Catt also prepared a mental medical source statement with checkmarks overlapping the categories of moderate (defined as "more than a slight limitation in this area but the individual is still able to function satisfactorily") and marked (defined as "serious limitation in this area [with] a substantial loss in the ability to effectively function") ability to interact appropriately with the public, supervisors, and coworkers, and to respond appropriately to usual work situations and changes in a routine work setting. (Tr. 358-9).

The ALJ gave several grounds for discounting Dr. Catt's opinion. He apparently did not give the GAF score weight on the grounds that it was a "snap

08-217 Barbara Jackson

shot" of the plaintiff's level of functioning at the time of the examination and "great variations in values may occur over a period of time." (Tr. 254).

Regarding the specific functional limitations, the ALJ cited unspecified inconsistencies between the narrative report and the handwritten medical source statement. (Tr. 255). The court can find no obvious inconsistencies, however. The psychologist noted the same moderate to marked limitations in both the narrative and the medical source statement. The handwritten comments state that the plaintiff's "ability to interact was affected to a moderate to marked degree due to depression [and] anxiety (sadness, irritability, trouble concentrating, lack of energy)." This also appears to be consistent with the narrative report. (Tr. 356-7).

The ALJ went on to state that he rejected "conclusions in the narrative report because they are conclusory," a somewhat confusing statement, as well as because they were inconsistent with the totality of the evidence. (Tr. 255).[2] He felt that the restrictions on tolerating stress and pressure and responding to supervision, coworkers and work pressures were "almost debilitating" but this was not consistent with the plaintiff's reports of "shopping for food, driving, visiting with her family, and that she enjoyed getting out alone." (Id.). The ALJ's rationale mischaracterizes the evidence by exaggerating Dr. Catt's limitations as being almost debilitating. Based

---

[2]The psychologist did not make a conclusory statement regarding the plaintiff's ability to work, for example, or state that she was disabled.

8

08-217  Barbara Jackson

on the definitions in the medical source statement, a standard form issued by the Social Security Administration, the plaintiff's restrictions in certain areas were somewhat <u>less</u> than "marked," which was defined as a "<u>substantial loss</u> in the ability to effectively function." (Tr. 358).  The form defines an "extreme" limitation as "no useful ability to function in this area," which is more consistent with the term "debilitating."  The significance of the distinction is that the psychologist's report indicates that the plaintiff does have functional restrictions, which clearly would have a vocational impact, but it does not truly assert that these restrictions would be debilitating in and of themselves.  This ground for rejecting Dr. Catt's report is not supported by substantial evidence.

Finally, there is the issue of whether the purported psychological restrictions are inconsistent with the plaintiff's reports that she shopped, drove, visited with family and enjoyed getting out alone.  While the plaintiff did report engaging in activities including taking care of herself, talking with her sister and niece, preparing frozen dinners, soups, and sandwiches, and shopping for 10 to 15 minutes perhaps once every two weeks as well as visiting her parents on Sundays in her initial Adult Functioning Report (Tr. 78-83), these activities in themselves are not very extensive. The Sixth Circuit has repeatedly cautioned that performing minimal daily functions are not comparable to typical work activities, which include responding appropriately to supervision, coworkers, and usual work situations and dealing with changes in

a routine work setting.  See Rogers v. Commissioner of Social Security, 486 F.3d 234, 248-9 (6th Cir. 2007), citing 20 C.F.R. § 416.921(b); Cohen v. Secretary of Health and Human Services, 964 F.2nd 524, 530 (6th Cir. 1992) (citation omitted) ("[E]vidence of the limited ability to perform some physical acts on an occasional basis is inadequate to support a reasonable conclusion of ability to engage in substantial gainful activity.").  The plaintiff also testified that she spent most of her time at home (Tr. 619), that she did not like being around crowds or children, was easily upset, and could not cope with pressure (Tr. 234), that her sister did the shopping except for the food that she ate for herself (Tr. 458) and more recently indicated that she did not drive, although she would ride in a car (Tr. 451).  This is far different from the ALJ's one-sided description of the plaintiff's daily activities.  Thus, his use of these factors to discredit the psychological examiner's conclusions is unpersuasive.[3]

The only professional evidence supporting the ALJ's decision in this regard were the reports of two non-examining state agency psychologists, who reviewed the record approximately a year before Dr. Catt's report was conducted and who concluded that the plaintiff did not have a "severe" impairment.  (Tr. 533-60).  While

---

[3] In a very recent unpublished decision, the Sixth Circuit noted that "[b]ecause the ALJ does not accurately state the evidence used to support his finding, his total discounting of the mental impairment is not supported by substantial evidence."  White v. Commissioner of Social Security, 2009 WL 454916 (6th Cir. Feb. 24, 2009), slip op. at 8.

08-217  Barbara Jackson

the opinion of a non-examining expert may be accepted over that of an examiner, the non-examiner must have had the benefit of the review of the entire record and clearly stated the reason that his opinion differed from that of the examiner.  <u>Barker v. Shalala</u>, 40 F.3d 789, 794 (6th Cir. 1994).  Therefore, these reports do not supply substantial evidence to support the administrative decision.  If the opinion of Dr. Catt is to be rejected, it would be advisable at a minimum for the ALJ to obtain an opinion from a medical advisor with access to all of the evidence.

 The decision will be remanded for further consideration.

 This the 12th day of May, 2009.

Signed By:

<u>G. Wix Unthank</u>

**United States Senior Judge**